**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION


JOE S. WESLEY, SR.                          *
                                            *
                      Plaintiff             *
                                            *
VS.                                         *            NO: 4:09CV00891  SWW
                                            *
CROTHALL SERVICES GROUP                     *
                                            *
                      Defendant             *
                                            *


## <u>ORDER</u>

Plaintiff Joe S. Wesley, Sr. ("Wesley"), proceeding *pro se*, brings this employment

discrimination action against Crothall Services Group ("Crothall"), pursuant to Title VII of the

Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Americans

with Disabilities Act ("ADA"), and the Equal Pay Act ("EPA").  Before the Court is Crothall's

motion for summary judgment (docket entries #36, #37, #38), Wesley's response in opposition

(docket entries #43, #44, #45), and Crothall's reply (docket entry #46).  After careful

consideration, and for reasons that follow, summary judgment will be entered in Crothall's favor,

and this action will be dismissed with prejudice.

## I.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As a

prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).   "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

Crothall  provides housekeeping services for medical facilities.  On October 18, 2007 Crothall hired Wesley to work as a floor technician at an hourly wage of $7.95, *see* docket entry #36, Ex. A (Haynes Dec., ¶ 5), and on January 7, 2008, Crothall promoted Wesley to the position of Lead Tech and increased his pay to $11.00 per hour.  Docket entry #36, Ex. A (Haynes Dec., ¶ 6); *see also* docket entry #36, Ex. B (Wesley Dep., at 35).

In his complaint, Wesley claims that Crothall discriminated against him on the basis of race, gender, age, and disability.  Specifically, he alleges that Crothall (1) discriminated against him on the basis of age by demoting him and replacing him with a younger person, with less experience; (2) discriminated against him on the basis of disability by suspending his employment for six to seven days after he provided notice that he suffers from peripheral

vascular disease; and (3) failed to pay him the salary he was due.  Wesley's pleading is void of

specific allegations relating to race or gender discrimination.

Before filing this lawsuit, Wesley filed a discrimination charge with the Equal

Opportunity Employment Commission ("EEOC"), which alleges that Crothall discriminated

against him by failing to promote him, demoting him, and suspending his employment on the

basis of age and disability.  Wesley's charge form, which makes no mention of race or gender

discrimination, reads:

> I was hired on or about October 18, 2007 as a Floor Technician and am currently
> employed as a Supply Clerk.  In October 2009, I applied for a supervisory position
> in my department.  On or about November 7, 2008, I informed my employer of my
> disability.  On or about November 8, 2008, I was demoted from my Lead Supply
> Clerk position to a Supply Clerk's position.  On or about November 15, 2008, a less
> qualified employee was selected for the vacant supervisor's position, about the same
> time I was suspended.  I returned to work on or about November 24, 2008.
>
> I was not given a reason why I was not selected for the vacant supervisor's position,
> why I was demoted, or why I was sent home.
>
> But I believe I was denied promotion, demoted, and suspended because of my Age
> (70), my disability, and in retaliation for reporting my disability, in violation of the
> Age Discrimination in Employment Act . . . and the Americans with Disabilities Act.

Docket entry #36, Ex. A, Attach.

### III.

Crothall moves for summary judgment, arguing that (1) Wesley failed to exhaust his

administrative remedies for claims of race and gender discrimination; (2) Wesley is unable to

make out a *prima facie* case of age or disability discrimination based on failure to promote,

demotion, or suspension; and (3) Wesley is unable to succeed with a claim for pay

discrimination.  The Court will address each argument in turn.

**1. Exhaustion of Administrative Remedies**

In most cases, to exhaust Title VII's administrative remedies an individual must (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge within one hundred eighty (180) days of the discrimination and (2) receive notice from the EEOC of the right to sue.  42 U.S.C. § 2000e-5(b), (c), (e).  Crothall argues that because Wesley's EEOC charge contains no allegations regarding race or gender discrimination, he failed to exhaust his administrative remedies with respect to those claims.

The Eighth Circuit has explained:

> A plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge. To determine whether an allegedly discriminatory action falls within the scope of a claim, the administrative complaint must be construed liberally in order to further the remedial purposes of applicable legislation.  Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.  *Therefore, the breadth of the civil suit is . . . as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.*

*Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir., 2002) (emphasis added) (citations and internal quotations omitted).

Here, Wesley's EEOC charge makes no mention of gender or race discrimination, and the Court cannot say that the scope of an administrative investigation resulting from his charge reasonably could have been expected to include such claims.  In fact, a letter to Wesley from the EEOC detailing the Commission's investigation of his discrimination charge reveals that the administrative investigation did not encompass allegations of race or gender discrimination.  *See* Compl., Attach.  The Court finds that Wesley failed to exhaust his administrative remedies with respect to claims for race and gender discrimination, and these claims will be dismissed.

4

**2.  Age and Disability Discrimination, *Prima Facie* Burden**

Because Wesley presents no direct evidence of age or disability discrimination, the traditional burden shifting, *McDonnell Douglas* framework applies.  *See Ward v. International Paper Co.*  509 F.3d 457, 460 (8th Cir. 2007)(ADEA claim), *Fenney v. Dakota*, *Minnesota & Eastern R. Co.*  327 F.3d 707, 711 (8th Cir. 2003)(ADA claim).[1]  Accordingly, Wesley must initially establish each element of the prima facie case.

*Failure to Promote.*  According to Wesley's deposition testimony, Crothall denied him a promotion to a supervisor position that was awarded to another Lead Tech, Tyrone Farmer.  *See* docket entry #36, Ex. B (Wesley Dep. at 77).   To make out a *prima facie* case of discrimination for failure to promote, a plaintiff need only show that he was qualified for and applied for promotion, he was rejected, and a similarly qualified employee, not part of his protected group, was promoted instead.  *See  Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1110 (8th Cir.2000).  Crothall presents undisputed evidence that the company requires all prospective candidates for supervisor positions to submit on-line applications for employment and that Wesley knew about the application requirement and failed to submit an application online.  Although Wesley might be able to overcome his failure to submit a formal application, the Court need not resolve the issue because Wesley offers no evidence of the qualifications necessary for the position in question, nor does he offer any evidence regarding his qualifications.  *See Rose-Maston v. NME Hospitals, Inc.*,133 F.3d 1104, 1110 (8th Cir. 1998).  Although the *prima facie* burden is minimal, Wesley has failed to meet it.

---

[1]With respect to Wesley's ADA claim, the Court notes that he alleges that Crothall took adverse employment action against him because of his disability; he does not allege that Crothall failed to reasonably accommodate his disability.

*Demotion*.  Wesley claims that on  November 8, 2008, Crothall demoted him after he informed his supervisors that he suffers from peripheral vascular disease.  The undisputed evidence shows otherwise.  On or about November 17, 2008, Wesley informed his supervisors, James Jordan and Roy Haynes, that he had difficulty walking and was unable to conduct inventory.    Docket entry #36, Ex. A (Hayes Dec., ¶ 8).  In an effort to gain more information about Wesley's physical condition, Haynes requested that Wesley obtain a note from his doctor. *Id*., (Haynes Dec. ¶ 8).  The following day, Wesley presented a note from his doctor stating that he should limit his walking due to peripheral vascular disease in his lower extremities.

After Wesley provided the doctor's note, he remained employed as a Lead Tech, and his wages remained the same.  In fact, in his annual job performance evaluation administered in January 2009, Wesley received scores of "competent" or higher, and his hourly wages were increased to $11.33.  *Id*., (Haynes Dec., ¶ 11).

To succeed with a claim for discrimination based on disability, Wesley must show that he (1) has a "disability" within the meaning of the ADA, (2) is a "qualified individual" under the ADA, and (3) "suffered an adverse employment action as a result of the disability." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th 2002).   Even assuming that Wesley can show that he has a disability and is a qualified individual under the ADA, he has failed to come forward with any evidence that he was demoted as a result of notifying Crothall that he suffers from peripheral vascular disease.

*Suspension*.  Wesley claims that Crothall suspended his employment for six to seven days after he presented the aforementioned doctor's note to Haynes and Jordan. Crothall submits undisputed evidence that after Wesley provided a the doctor's note, Haynes asked Wesley to

provide additional information about his physical restrictions.  *See* docket entry #36, Ex. A (Haynes Dec., ¶ 9).  Wesley disputes "ever being asked to provide additional medical information," *see* docket entry #45, ¶ 10, but he provides nothing other than his unsworn assertion to support this assertion.   In any event, the undisputed evidence shows that Wesley never provided specific information regarding his physical limitations, and he voluntarily missed work  "for a few days" after Haynes requested additional information.  *Id*., (Haynes Dec., ¶ 10). Wesley presents no evidence showing that Crothall suspended his work schedule.

**3.  Pay Discrimination**

In his complaint,  Wesley alleges: "Pay discrimination (EPA)-the plaintiff worked in a supervisory position and received pay as a Lead Tech (ten to twelve thousand dollars) difference in pay; Per Year."  Complaint, ¶ 9.  When asked about his pay discrimination claim in deposition, Wesley testified that several people told him that his job performance was better than that of a female who worked in a supervisory position before he was hired.   *See* docket entry #36, Ex. B (Wesley Dep. at 83-84).

To establish a *prima facie* case under the EPA, Wesley must show that Crothall discriminated on the basis of sex by paying wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " *Horn v. University of Minnesota*, 362 F.3d 1042, 1045 (8th Cir.2004) (quoting 29 U.S.C. 206(d)(1)).   Here, Wesley fails to provide any admissible evidence to support a *prima facie* case of pay discrimination.

**IV.**

For the reasons stated, the Court finds no genuine issues for trial.  Defendant's motion for

summary judgment (docket entry #36) is GRANTED.  Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 29TH DAY OF DECEMBER, 2010.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE